**Reversed and Remanded and Opinion filed November 6, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00214-CV

## UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER, Appellant

## V.

## NEVINE ELTONSY, Appellee

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-69063**

# O P I N I O N

In this interlocutory appeal from a workplace-discrimination case, we agree with the University of Texas MD Anderson Cancer Center that the trial court erred in denying its plea to the jurisdiction concerning its employee's gender-discrimination and sexual-harassment claims, and that its arguments regarding retaliation are moot. We accordingly reverse the trial court's order and remand the case for further proceedings consistent with this opinion.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee Nevine Eltonsy was hired by the University of Texas MD Anderson Cancer Center ("MD Anderson") in 2009 and terminated in March 2012. She filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 23, 2012, alleging that she was discharged based on her gender because she complained that males throughout the University of Texas System holding the same position that she held were paid more. She further asserted that she had begun making these complaints in 2009.

After receiving notice of her right to file a civil action, Eltonsy sued her employer under the Texas Commission on Human Rights Act. She alleged that (a) MD Anderson engaged in pay discrimination based on her gender; (b) it terminated her employment based on her gender; (c) it terminated her employment in retaliation for her complaints of gender-based pay discrimination; and (d) her supervisors sexually harassed her, creating a hostile work environment that altered a term, condition, or privilege of her employment. MD Anderson filed a plea to the jurisdiction asserting sovereign immunity to Eltonsy's claims. Eltonsy responded with evidence that she argued supported the existence of jurisdiction, and MD Anderson filed a reply. After the hearing but before the trial court ruled, Eltonsy amended her petition, and MD Anderson accordingly amended its plea to the jurisdiction. Once again, Eltonsy responded with evidence for the trial court to consider in determining whether it has jurisdiction over her claims. After an oral hearing, the trial court denied the plea to the jurisdiction. MD Anderson challenges that ruling.

# II. STANDARD OF REVIEW

The University of Texas MD Anderson Cancer Center is a governmental unit generally entitled to sovereign immunity. *See Hampton v. Univ. of Tex.-M.D.*

*Anderson Cancer Ctr.*, 6 S.W.3d 627, 628 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Sovereign immunity bars suits against the state and its entities unless the state waives immunity. *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013). One such waiver can be found in Chapter 21 of the Texas Labor Code, commonly referred to as the Texas Commission on Human Rights Act ("the TCHRA"); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) ("*Garcia I*") (holding that "the TCHRA clearly and unambiguously waives immunity").[1] The TCHRA provides that an employer may not, on the basis of "race, color, disability, sex, national origin, or age," discriminate in any manner against an employee in connection with compensation or the terms, conditions, or privileges of employment. *See* TEX. LAB. CODE § 21.051 (West 2006).

The TCHRA's waiver of immunity applies only if the plaintiff actually alleges a violation within the scope of the statute. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012) ("*Garcia II*"). If the plaintiff does not plead facts sufficient to state a prima facie case of discrimination under the TCHRA, the governmental unit may challenge the pleadings with a plea to the jurisdiction. *See id.* at 632. Whether the pleadings contain factual allegations affirmatively demonstrating the trial court's subject-matter jurisdiction is a question of law that we review de novo. *Univ. of Tex. Med. Branch at Galveston v. Petteway*, 373 S.W.3d 785, 789 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). We determine whether the plaintiff's pleadings, construed in the plaintiff's favor, allege facts sufficient to affirmatively demonstrate the trial court's

---

[1] *See Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 502 n.1 (Tex. 2012) (explaining that although courts continue to refer to Chapter 21 of the Texas Labor Code as the Texas Commission on Human Rights Act, the Commission on Human Rights has been replaced by the civil-rights division of the Texas Workforce Commission).

jurisdiction to hear the case. *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012). Unless the pleadings affirmatively demonstrate the absence of jurisdiction, a plaintiff must be afforded a reasonable opportunity to amend if the pleading defect can be cured. *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839–40 (Tex. 2007). Incurably defective claims, however, must be dismissed with prejudice. *See id.* at 846.

If the plaintiff pleaded facts making out a prima facie case and the governmental unit instead challenges the existence of jurisdictional facts, we consider the relevant evidence submitted. *Miranda*, 133 S.W.3d at 227–28. If the governmental unit's evidence shows that the trial court lacks jurisdiction, the plaintiff must show that there is a disputed material fact on the issue. *See id.* at 228. We review the trial court's ruling, taking as true all evidence favoring the plaintiff, indulging every reasonable inference and resolving any doubts in her favor. *See id.* If the evidence fails to raise a genuine issue of material fact on the existence of jurisdiction, the claim must be dismissed with prejudice. *See Harris County v. Sykes*, 136 S.W.3d 635, 640–41 (Tex. 2004).

### III. ALLEGED PAY DISCRIMINATION BASED ON GENDER

Before a plaintiff can maintain a suit for employment discrimination, the plaintiff first must file a complaint of employment discrimination with the Texas Workforce Commission's civil rights division, or alternatively, with the EEOC. *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 503 (Tex. 2012). Although the complaint can be filed with either agency, it must be filed within 180 days "after the alleged unlawful employment practice occurred." TEX. LAB. CODE ANN. § 21.202 (West 2006). This statutory prerequisite to suit is itself a jurisdictional requirement. *Chatha*, 381 S.W.3d at 510 & n.15 (citing TEX. GOV'T CODE ANN. § 311.034 (West 2013)).

MD Anderson asserted in its plea to the jurisdiction that Eltonsy's pay-discrimination claim is untimely. Eltonsy alleged in her pleadings that she was informed of the pay-setting decision on February 2, 2009, and MD Anderson asserted in its plea to the jurisdiction that Eltonsy did not file a charge of discrimination until March 23, 2012. MD Anderson argues that Eltonsy could not maintain her claim for pay discrimination because she admitted that she was informed of the pay-setting decision more than 180 days before she filed her complaint. As part of the jurisdictional evidence, both MD Anderson and Eltonsy produced copies of Eltonsy's EEOC complaint dated March 23, 2012. Moreover, Eltonsy admitted that "[t]he 180 day filing period was September 25, 2011 through March 23, 2012." She argues that her pay-discrimination claim nevertheless is timely because she filed her EEOC complaint three days after she was terminated for complaining to her employer about the discrimination. Thus, the relevant facts are undisputed, and the legal question presented is whether the 180-day deadline began to run when Eltonsy was told of the pay-setting decision in February 2009 or when she was terminated in March 2012.

In pay-discrimination claims, the 180-day deadline begins to run on the date that the employee "is informed of the alleged discriminatory pay decision." *Id.* at 510. As the Texas Supreme Court explained,

> In pay discrimination cases, the setting of an alleged discriminatory pay rate is a discrete act—that is, the only act taken with a discriminatory motive is the pay-setting decision. Subsequent paychecks containing an alleged discriminatory pay amount are merely consequences of past discrimination and do not constitute an unlawful employment practice under the TCHRA. Thus, an employee must file a complaint under the TCHRA within 180 days of the date she is informed of the alleged discriminatory pay decision.

*Id.* Because the undisputed facts conclusively establish that Eltonsy filed her EEOC complaint more than 180 days after MD Anderson informed her of its pay-

setting decision, the trial court erred in denying MD Anderson's plea to the jurisdiction as to Eltonsy's claim of pay discrimination based on gender.

Eltonsy argues that because she was terminated for complaining to her employer about the pay discrimination less than 180 days before she filed a complaint with the EEOC, her claim for gender discrimination is timely. But, as explained further *infra*, that is not a claim of gender discrimination but instead is a separate claim for retaliation.

## IV. ALLEGED TERMINATION BASED ON GENDER

MD Anderson also argues that Eltonsy failed to plead a prima facie case of gender discrimination in connection with her termination. To prevail on a claim of gender discrimination, the plaintiff must establish that she was (a) a member of a class protected by the TCHRA, (b) qualified for her position, (c) subjected to an adverse employment action, and (d) treated less favorably than similarly situated individuals outside of the protected class. *See Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 393 (Tex. App.—Houston [14th Dist.] 2014, pet. filed). MD Anderson argues that Eltonsy failed to allege that in terminating her employment, MD Anderson treated her less favorably than similarly situated males. Eltonsy treated this as a challenge both to the pleadings and to the jurisdictional evidence.

As to the pleadings, Eltonsy argued that her allegations were sufficient because her pleadings included the following language: "Defendant discriminated against Plaintiff in violation of the [TCHRA] based upon Plaintiff's sex. She alleges that sex, was a motivating factor in Defendant's decision to terminate her employment." This conclusory assertion, however, does not constitute a prima facie case of gender discrimination. *See Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (stating that subjective beliefs are insufficient to establish a prima facie case). Eltonsy also

6

pointed out that she pleaded that MD Anderson treats similarly situated males and females differently with regard to pay; however, there are no factual allegations that MD Anderson treats similarly situated males and females differently with regard to discipline or termination.

Regarding the evidence, Eltonsy asserted that in her answers to MD Anderson's interrogatories, she listed the names and salaries of three male employees who were paid more than she was paid for the same work.[2] But such material suffers from the same flaw that Eltonsy's pleading does: it pertains to the question of whether MD Anderson treated males and females differently when making decisions about compensation, not about whether it treated them differently when making decisions about discipline or termination.

Eltonsy appears to be conflating a prima facie case of gender discrimination with a prima facie case of retaliation, but the two are not the same. *See ATI Enters., Inc. v. Din*, 413 S.W.3d 247, 252 (Tex. App.—Dallas 2013, no pet.) ("Retaliation is a distinct theory of liability that is not encompassed by other theories of discrimination."); *Davis v. Educ. Serv. Ctr.*, 62 S.W.3d 890, 894 (Tex. App.—Texarkana 2001, no pet.) ("Retaliation is an independent violation of the TCHRA . . . ."). A plaintiff makes out a prima facie case of retaliation by showing that (a) she engaged in a protected activity, (b) an adverse employment action occurred, and (c) there is a causal link between the protected activity and the adverse action. *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 900 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Whereas a claim of gender discrimination requires a showing that the plaintiff belongs to a protected class, a claim of retaliation requires a showing that the plaintiff engaged in a protected activity. Expressing opposition to a discriminatory practice is a protected activity. *See* TEX.

---

[2] The answers themselves are not in the record.

7

LAB. CODE ANN. § 21.055(1) (West 2006) ("An employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter . . . opposes a discriminatory practice . . . ."); *City of Waco v. Lopez*, 259 S.W.3d 147, 152 (Tex. 2008) ("[A]ctionable retaliation exists when an employer makes an adverse employment decision against an employee who voices opposition to conduct made unlawful under the [TCHRA], regardless of whether the employee has already filed a formal complaint with the Commission."). Eltonsy's assertion that she was terminated because she complained about a discriminatory practice is not in itself an allegation of gender discrimination; it is an allegation of retaliation. *See Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 809 (7th Cir. 2001) ("Holding otherwise would force us to conclude that 'every claim of retaliation for filing charges of discrimination would be a claim of discrimination, even thought [sic] Title VII makes discrimination and retaliation separate wrongs.'" (quoting *Heuer v. Weil-McLain*, 203 F.3d 1021, 1022–23 (7th Cir. 2000))), *cited with approval in Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 475–76 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In sum, there are neither allegations nor evidence that in terminating Eltonsy, MD Anderson treated Eltonsy less favorably than similarly situated males. The trial court accordingly erred in failing to grant MD Anderson's plea to the jurisdiction as to this claim.

## V. RETALIATION CLAIMS BASED ON CONDUCT BEFORE SEPTEMBER 25, 2011

MD Anderson's only appellate argument concerning retaliation is that retaliation claims "*based on actions prior to September 25, 2011* do not fall within the statutory waiver of sovereign immunity and must be dismissed as a matter of law." (emphasis added). Moreover, MD Anderson stated in its reply brief:

> In Appellee's Brief, Appellee makes it clear that she is not

8

bringing any claim of retaliation for any action of Appellant other than her termination. **If this is Appellee's position, the Appellant's Brief regarding retaliation claims before September 25, 2011 is moot.**[3]

We agree that Eltonsy conceded in her brief that "events occurring more than 180 days before a former employee filed a charge of discrimination cannot be the basis for legal redress in an action under the TCHRA." She further stated that her retaliation claim is based on events that occurred on February 2, 2012; March 9, 2012; March 12, 2012; and March 20, 2012. In light of these admissions, we agree that this issue is moot. *See Thomas v. Cook*, 350 S.W.3d 382, 390 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("A case becomes moot when (1) it appears that one seeks to obtain a judgment on some controversy, when in reality none exists, or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy." (quoting *Pantera Energy Co. v. R.R. Comm'n of Tex.*, 150 S.W.3d 466, 471 (Tex. App.—Austin 2004, no pet.) (op. on reh'g))). We therefore treat this issue as withdrawn.

## VI. ALLEGED SEXUAL HARASSMENT BASED ON HOSTILE WORK ENVIRONMENT

MD Anderson argues that the trial court lacks jurisdiction over Eltonsy's sexual-harassment claim because, among other things, Eltonsy failed to exhaust administrative remedies[4] and failed to allege facts constituting a prima facie case.[5]

---

[3] Emphasis added.

[4] In a civil action under the TCHRA, the plaintiff "is limited to the complaints made in the discrimination charge and factually related claims that could reasonably be expected to grow out of the Commission's investigation of the charge." *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

[5] To prevail on a claim of sexual harassment based on a hostile work environment, the claimant must show that (a) she was an employee who belongs to a protected class; (b) she was subjected to unwelcome harassment; (c) the harassment was based on sex; (d) the harassment affected a term, condition, or privilege of employment; and (e) the employer knew or should

9

Eltonsy did not mention harassment in her administrative complaint; she did not allege facts in her civil pleading constituting a prima facie case of sexual harassment; she did not address this issue in her response to MD Anderson's plea to the jurisdiction; and she did not respond to it on appeal. Moreover, at the hearing on the plea to the jurisdiction, Eltonsy's counsel repeatedly represented that Eltonsy no longer intended to pursue a sexual-harassment claim, and argued that the plea to the jurisdiction "on all the grounds except the sexual harassment claim should be overruled." We accordingly agree that the trial court erred in failing to grant MD Anderson's plea to the jurisdiction as to this claim.

## VII. CONCLUSION

We reverse the portions of the trial court's order denying MD Anderson's plea to the jurisdiction as to Eltonsy's claims that MD Anderson committed gender discrimination in setting her pay or in terminating her employment or that MD Anderson engaged in sexual harassment. We remand the case with instructions to the trial court to dismiss these claims with prejudice.


/s/    Tracy Christopher
       Justice

Panel consists of Chief Justice Frost and Justices Christopher and Busby.

---

have known of the harassment and failed to take adequate remedial action. *Tex. Dep't of Aging & Disability Servs. v. Iredia*, No. 01-13-00469-CV, 2014 WL 890921, at *4 (Tex. App.— Houston [1st Dist.] Mar. 6, 2014, no pet.) (mem. op.). "The work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Martinez v. AA Foundries, Inc.*, No. 04-11-00879-CV, 2013 WL 346814, at *6 (Tex. App.—San Antonio Jan. 30, 2013, no pet.) (mem. op.) (quoting *Aryain v. Wal–Mart Stores of Tex., LP*, 534 F.3d 473, 479 (5th Cir. 2008)). "Courts look to all the circumstances in determining whether a hostile work environment exists, including the frequency of the discriminatory conduct and whether it unreasonably interfered with the employee's work performance." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 806 (Tex. 2010).