**Reversed and Rendered; Memorandum Opinion filed June 18, 2026.**



In The

# Fifteenth Court of Appeals

### NO. 15-25-00011-CV

**THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM, THE UNIVERSITY OF TEXAS SYSTEM, AND THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER, Appellants**

**V.**

**GENSETIX, INC., Appellee**

**On Appeal from the 152nd District Court of Harris County, Texas
Trial Court Cause No. 2021-73071**

## MEMORANDUM OPINION

Appellee Gensetix, Inc. filed the underlying suit against the University of Texas M.D. Anderson Cancer Center, the University of Texas System, and the Board of Regents of the University of Texas System (collectively, the MD Anderson Parties) for breach of contract and a constitutional taking. The MD Anderson Parties filed a plea to the jurisdiction, which the trial court denied. In this interlocutory appeal, the MD Anderson Parties contend that the trial court erred in denying their

plea because they are protected from suit by sovereign immunity. Because we conclude that the allegations in Gensetix's pleadings and the jurisdictional evidence are insufficient to support a claim for which immunity is waived, we reverse the trial court's judgment and render judgment dismissing the suit for lack of jurisdiction.

## BACKGROUND

The dispute underlying this appeal arises out of a "Patent and Technology License Agreement" (the Agreement) concerning cancer-treating technology developed at MD Anderson. The Agreement was originally between MD Anderson, by and through the Board of Regents, and Alex Mirrow, a third party not relevant to this suit. Mirrow later assigned his licensee rights to Gensetix. According to Gensetix's live pleadings, "after taking assignment from Mirrow with [the University of Texas's] and MD Andersons's consent," it paid "hundreds of thousands of dollars to [the University of Texas] and MD Anderson" and agreed to develop the technology and fund the research. Further, as part of this funding, and at MD Anderson's request, Gensetix made payments totaling more than $100,000 to one of the co-inventors on the patents, William Decker. In exchange, MD Anderson agreed to "cooperate fully" in any suit filed by Gensetix for infringement.

In 2016, Gensetix filed suit against Decker and his new employer, Baylor College of Medicine (Baylor), for patent infringement. MD Anderson, however, refused to participate in the lawsuit, claiming immunity when it was added as an involuntary plaintiff. *See Gensetix, Inc. v. Baylor Coll. of Med.*, 354 F. Supp. 3d 759, 768 (S.D. Tex. 2018), *aff'd in part, rev'd in part and remanded sub. nom. Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*, 966 F.3d 1316 (Fed. Circ. 2020). In the instant suit, Gensetix alleges that MD Anderson's refusal to participate in that suit was a result of its "quiet" side deal with Baylor and Diakonos Research Ltd., a company that actively sought to purchase Gensetix's licensing rights.

2

According to Gensetix's pleadings, the "lawsuit [against Baylor and Decker] threatened to expose the infringing work Decker had been doing on 'improvements' [to the technology] that would steer millions to [the University of Texas] and MD Anderson through Diakonos [Research]." Gensetix's suit for patent infringement was ultimately unsuccessful. In 2020, MD Anderson sent written notice to Gensetix that it was terminating the Agreement due to Gensetix's failure to make certain payments under the contract. The next year, MD Anderson conveyed the patents to Baylor.

In this suit against the MD Andersons Parties, Gensetix alleges two causes of action—a constitutional taking of its property and breach of the licensing agreement related to the patents at issue. In response, the MD Anderson Parties filed a plea to the jurisdiction, asserting that they are protected from suit by sovereign immunity. After the trial court denied the plea, the MD Anderson Parties timely filed their notice of interlocutory appeal.

## STANDARD OF REVIEW

Sovereign immunity generally bars suits against the State and its agencies—including boards, hospitals, and universities—absent a clear and unambiguous legislative waiver of immunity. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) Because the assertion of immunity implicates the court's jurisdiction, it is properly raised by a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex. 2004). A plea to the jurisdiction is a procedural mechanism through which a party may challenge the court's authority to decide a case without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Because whether a trial court has jurisdiction is a question of law, we review a trial court's ruling on the plea de

novo. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002)

The initial burden is on the plaintiff to demonstrate the trial court's jurisdiction to hear the case. *Hall v. McRaven*, 504 S.W.3d 414, 420 (Tex. 2016). A plea to the jurisdiction may challenge whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction, the existence of those jurisdictional facts, or both. *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021). When a plea to the jurisdiction challenges the plaintiff's pleadings, we consider whether the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 226. In doing so, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Id*. at 226–27.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When those challenged jurisdictional facts also implicate the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the court's analysis generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). *Lara*, 625 S.W.3d at 52; *Miranda*,133 S.W.3d at 228. That is, the evidence is reviewed in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved at trial by the fact finder. *Miranda*, 133 S.W.3d at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id*. at 228.

4

When a governmental defendant challenges subject-matter jurisdiction on the basis of immunity, the plaintiff's burden of affirmatively demonstrating jurisdiction includes pleading facts or, if necessary, presenting evidence establishing that sovereign immunity either does not apply or has been waived. *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021). If the plaintiff cannot satisfy this burden, the trial court must dismiss the suit. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023).

## ANALYSIS

On appeal, the MD Anderson Parties contend that the trial court erred in denying their plea to the jurisdiction based on their assertion of sovereign immunity. Specifically, the MD Anderson Parties assert that, as governmental entities, they are protected from suit by sovereign immunity.[1] Moreover, in their plea and now on appeal, the MD Anderson Parties contend that Gensetix has failed to affirmatively demonstrate that either its breach-of-contract claim or its takings claim, as alleged, is a claim for which immunity does not apply or has been waived. *See Matzen*, 659 S.W.3d 381.

We first consider MD Anderson Parties' assertion of immunity as it relates to Gensetix's takings claims. The Texas Constitution states that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex.

---

[1] University systems and institutions of higher education are "state agencies," for purposes of immunity. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 331–32 (Tex. 2006); *see also* Tex. Gov't Code § 572.002(10)(B) (state agencies include "a university system or an institution of higher education as defined by Section 61.003" of the Education Code). There is no dispute that the MD Anderson Parties are governmental entities generally entitled to sovereign immunity. *See Univ. of Texas M.D. Anderson Cancer Ctr. v. Eltonsy*, 451 S.W.3d 478, 482 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("The University of Texas MD Anderson Cancer Center is a governmental unity generally entitled to sovereign immunity.").

Const. art. 1, § 17(a). The Takings Clause operates as a waiver of sovereign immunity for claims seeking compensation under it. *Texas Dep't of Transp. v. Self*, 690 S.W.3d 12, 25 (2024). The elements of an inverse condemnation or takings claim are (1) an intentional act by a governmental entity, (2) that resulted in a taking of property , (3) for public use. *Id.* at 26. With regard to the first element, the Texas Supreme Court has held that when the government acts pursuant to colorable contract rights, it lacks the necessary intent to take under its eminent domain powers and thus retains immunity from suit. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007).

Gensetix contends that by terminating its exclusive patent license and selling the underlying patents to Baylor, MD Anderson's actions constituted a taking. In response, the MD Anderson Parties assert that Gensetix's allegations, even if true, fail to demonstrate a viable takings claim. According to the MD Anderson Parties, they are entitled to immunity on Gensetix's takings claims because the undisputed allegations and evidence shows that MD Anderson lacked the intent necessary to support a constitutional taking. *See Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598-99 (Tex. 2001) ("[T]he State does not have the requisite intent under constitutional-takings jurisprudence when it withholds property or money from an entity in a contract dispute. Rather the State is acting within a color of right under the contract and not under its eminent domain powers.").

During the pendency of this appeal, this Court decided a similar case, and our resolution of the parties' arguments on Gensetix's takings claim is largely governed by that decision. *See Curadev Pharma Pvt. Ltd. v. Univ. of Tex. Southwestern Med. Ctr.*, 721 S.W.3d 90, 97 (Tex. App.—15th 2025, pet. filed) ("[T]he Texas Supreme Court has held that when the government acts pursuant to colorable contract rights, it lacks the necessary intent to take under its eminent domain powers and thus retains

6

its immunity from suit."); *see also id.* at 107 (Brister, C.J., concurring and dissenting) ("When the government takes money or property belonging to A pursuant to a contract the government has with A, I agree there is no taking."). In *Curadev*, the plaintiff Curadev developed a cancer treatment, and UT Southwestern entered into an agreement with Takeda, to whom Curadev had licensed some of its technology. *Id.* at 98. Under UT Southwestern's agreement with Takeda, Takeda provided Curadev's protected materials to UT Southwestern. *Id.* Curadev claimed that UT Southwestern improperly used Curadev's materials acquired under its agreement with Takeda, leading to UT Southwestern's publication about Curadev's technology, which Curadev claimed was a trade secret. *Id.* Curadev filed a takings claim against UT Southwestern. This Court held that despite Curadev's lack of a contract with UT Southwestern, its takings claim failed because UT Southwestern acted under color of its contract with Takeda. *Id.* at 99-100. We concluded that Curadev therefore was unable to demonstrate that UT Southwestern possessed an intent to take Curadev's property. *Id.* at 99.

Similarly, in this case, Gensetix complains that MD Anderson took its property by terminating the contract between them and then selling the patents to Baylor. Moreover, unlike the facts of *Curadev*, where there was no direct contractual relationship, Gensetix and MD Anderson had a contract, and MD Anderson exercised its rights under the contract, rightfully or wrongfully, in terminating the contract. Consequently, just as in *Curadev*, the undisputed allegations and the jurisdictional evidence show that MD Anderson acted under color of contract in terminating Gensetix's licensing agreement. Under these circumstances, MD Anderson could not have had the requisite intent to take the property pursuant to its sovereign powers. [2] *See id.* at 99 (citing *Little-Tex*

---

[2] Gensetix contends that the Texas Supreme Court's decision in *Self* controls and that in that decision, the court "abrogated" the "'color of right' theory of immunity." *See Tex. Dept. of*

*Insulation*, 39 S.W.3d at 599). Consequently, the trial court erred in failing to grant the MD Anderson Parties' jurisdictional challenge on Gensetix's takings claim. *See id.* at 98 (explaining that if plaintiff does not and cannot plead a viable takings claim in response to plea to the jurisdiction, the trial court must dismiss claim).

Next, we consider the trial court's jurisdictional ruling with respect to Gensetix's breach-of-contract claims. The Texas Supreme Court has recognized that a governmental entity does not waive immunity by simply entering into a contract with a private citizen. *Little-Tex Insulation*, 39 S.W.3d at 593 ("[T]he State does not waive its immunity from suit for breach of contract simply by entering into a contract for goods and services."). This is true even when the governmental entity accepts the benefits of the contract. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). Consequently, a party cannot sue a governmental entity for breach of contract absent permission from the Legislature. *Id.*

Here, Gensetix does not allege that the Legislature has waived immunity for its breach-of-contract claims against the MD Anderson Parties. Instead, Gensetix argues that because MD Anderson's alleged conduct is so "egregious," it should not be allowed to claim immunity from its breach. *See Federal Sign v. Texas Southern Univ.*, 951 S.W.2d 401, 408 n.1 (Tex. 1997) ("There may be other circumstances where the State may waive its immunity by conduct other than by simply executing a contract so that it is not always immune from suit when it contracts."). In response,

---

*Transp. v. Self*, 690 S.W.3d 12, 27 (Tex. 2024). *In Self*, the court rejected the State's argument that the government does not act with the requisite "intent" to take property when it subjectively believes it has title to or a legal right in the property. *Id.* at 32. In addition, the court recognized, as we do here, that "when the government acts on its rights under a contract to which the parties have consented . . . it is not exercising sovereign powers." *Id.* (citing *Gen. Servs. Comm'n v. Little-Tex Insulation, Co., Inc.*, 39 S.W.3d 591, 598-99 (Tex. 2001)). We do not construe the opinion in *Self* as abrogating the court's previous holding that "the State does not have the requisite intent under constitutional-takings jurisprudence when it withholds property or money from an entity in a contract dispute." *Little-Tex Insulation*, 39 S.W.3d at 598-99.

8

the MD Anderson Parties assert that this waiver-by-conduct theory asserted by Gensetix is not a valid theory for defeating sovereign immunity. We agree with the MD Anderson Parties.

A similar waiver-by-conduct theory was asserted by the plaintiff in *Curadev*. Specifically, Curadev contended that UT Southwestern waived its sovereign immunity through its conduct in misappropriating its trade secrets. 721 S.W.3d at 102. In doing so, Curadev asserted that "extraordinary factual circumstances" could lead to waiver of a governmental entity's sovereign immunity, relying on *Texas Southern University v. State Street Bank & Trust Company*, 212 S.W.3d 893, 907 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In our opinion, we rejected the reasoning of the *State Street* case, noting that the appellate court's decision "contradict[ed] the Supreme Court's statements that the only avenue for waiver of sovereign immunity is through the Legislature." *Curadev*, 721 S.W.3d at 102–03. Instead, we followed Texas Supreme Court decisions holding that waiver of immunity by conduct does not exist under these circumstances. *Id.* at 103.

Similar to the plaintiff in *Curadev*, Gensetix claims that MD Anderson should be liable for breach of their licensing agreement based on what it contends are "extraordinary factual circumstances." That is, Gensetix claims that MD Anderson's conduct, as presented in its pleadings and by its evidence, demonstrates bad faith in dealing with and supporting Gensetix competitors' efforts to obtain the technology and Gensetix's license, among other things. But even if these allegations are true, which, for purposes of this analysis, we must assume, they are insufficient to demonstrate a waiver MD Anderson's sovereign immunity. As we noted in *Curadev*, the Texas Supreme Court has made clear that for a breach of contract claim, there can be no waiver of immunity by conduct in these circumstances. *Id.* at 102–03. We reiterate that decision again today and hold that MD Anderson is immune from Gensetix's claims for breach of contract.

9

In summary, taking as true the allegations in Gensetix's pleadings, and viewing the jurisdictional evidence in the light most favorable to Gensetix, we conclude that Gensetix has failed to meet its burden to demonstrate that the trial court has subject-matter jurisdiction over its claims. That is, Gensetix has failed to show that it has a breach-of-contract claim for which immunity has been waived or that it has a viable constitutional takings claim.

## CONCLUSION

We conclude that the trial court erred in denying the MD Anderson Parties' plea to the jurisdiction. We therefore reverse the trial court's order denying the plea and render judgment dismissing Gensetix's claims.

/s/ Scott K. Field
Scott K. Field
Justice

Before Chief Justice Brister and Justices Field and Farris.